Mr. Justice Cox
delivered the following concurring opinion :■
The substance of this case is, that a married woman owning, as her separate estate, an undivided fourth part of certain real estate in New York, contracted to buy another undivided fourth from the owners of it, and gave the note on which this suit is brought for the agreed price; and the question is, whether the act of April 10, 1869, empowers her to make such a contract.
That act declares that “ any married woman may contract, and sue and be sued in her own name, in all matters having *543 relation to her sole and separate property, in the same manner as if she were unmarried.”
The only sole and separate property owned by the defendant was the fourth which she owned before this contract was made. But the contract was not made in relation to that. It was attempted, it is true, to make it appear such by averring that it was made for the benefit of that property. But that amounts to nothing more than this, viz., that the object in view in making the contract was indirectly to benefit the property already owned; as if I should buy a house or farm adjoining one already owned for the purpose of adding to its advantages. After all, the contract was not in relation to that, but to other property which, when it was made, was not that of the defendant.
It would seem a very plain proposition, that, in logical sequence, a contract to buy property precedes the ownership of it, as causé precedes effect. The ownership results from the purchase, and when the contract is made it cannot be said to relate to the purchaser’s property, but it relates to that of the vendor.
By no correct dialectics can the same contract which, by purchase, creates the separate property, be said to relate to the separate property of the party buying. It can only be maintained by reasoning in a circle. If we ask how, under this law, the feme-covert can buy the property, the only answer is, that it is a contract relating to her separate property; and if .we ask how it can be that, the only answer is that she has bought the property.
Then this part at least of the law does not authorize a married woman to make an executory contract for the purchase of another’s real estate. If she owns sole and separate estate, she can undoubtedly sell it, and the price would still be her separate property. She could invest her money — her separate estate — in other property. She could also exchange her separate property, and that received in exchange would be the price of what she had conveyed, and would stand in its place as to her power of disposal.
*544 But in each of these eases the contract would be good, not as a contract relating to the newly-acquired money or property, but as a contract relating to the estate which she owned before, the fruit of which contract would be the new acquisition.
But it is a very different thing to make a purchase of real estate and give a personal obligation for it, without reference to property already owned, and without pledging or applying it in the purchase. I do not see how a feme-covert could do this; and it makes no difference, in my judgment, whether she owns separate estate or not, if the contract she makes is a purely personal one and relates to property which she does not own, but is seeking to acquire by the contract. Such a contract would not be, in the language of our law, in a “matter having relation to her sole and separate property.”
The idea of sole and separate ownership by a married woman, embodied in this and similar statutes, is derived from the well-known settlements of property to the separate use of married women, with or without the intervention of trustees designed to protect it from the control of husbands, and to give them a power of disposal by appointment or otherwise. Courts of equity have recognized the right of a feme-covert, under these settlements, to pledge such separate estate for debts, or to contract debts, as it is called, on the faith of the property. Sometimes a general obligation, merely personal in form, has been held good, only because it must be deemed to have reference to the property, as it would be otherwise • unmeaning and useless. But in no case before these statutes has a court of equity considered the possession of separate property as empowering to contract purely personal obligations; and still less has it ever deemed a mere purchase of property and the giving of such an obligation to pay for it, even for the purpose of holding it as separate, to be a contract relating to separate property which a married woman was capable of making. Now, it seems to us that this statute was not designed to make any alteration in this respect. Its object apparently was to make that sole and separate property *545 subject to the wife’s disposal, which was not so before, and to give a legal capacity to contract, which was only recognized in courts- of equity before. Before the statute was passed, property acquired generally by a married woman, by descent, devise, or conveyance, was not her separate property, but it only becomes so by being expressly so given.
In the absence of such express settlement, the personalty . becomes the husband’s, and the realty was virtually his during coverture, and she had no power over either. By this law, all such property is made sole and separate, without the necessity of settlements or trustees. It is protected from the husband, and is made subject to the same control, and the wife endowed with the same powers of contracting, with reference to it, that had previously been recognized by courts of equity under the settlement I have spoken of. But it was not intended to give a new power of contracting personally.
My proposition, that the right to contract in matters having-relation to her sole and separate estate does not include a power to make executory contracts for the purchase of a new-estate, is sustained by several authorities.
Thus, in Jones v. Crossthwaite, 17 Iowa, 402, the court say:
“ Only one question remains, and that is, whether, in the view that Mrs. C. was the purchaser of the real estate, the notes which she executed were in relation to her separate prop-erty? Her separate property, within the meaning of the law,. is that which she has acquired by settlement upon her, by in-: heritance, gift, grant, or purchase, and which is hers.”
‘■An executory contract to purchase is not a contract in reljxtion to her separate property, within the meaning of section 2506 of the Revised Statutes.”
So, in the case of Ames v. Foster, 42 N. H., 381, which w'as-a suit on a note given for money borrowed to pay for real and personal property bought of a third person, the court say:
“ By section 13 of the statute a married woman may hold any property conveyed to her sole and separate use, free from the control or interference of her husband as if she were sole, and * * * shall have the same rights and possess and *546 be entitled to the same remedies in her own name, both at law and in equity, and be liable to be held at law or in equity upon any contract by her made, in the same manner and with the same effect as if she were unmarried.” * * *
“Two views only have been presented to us; one, that which requires that a married woman must have 'real estate conveyed and secured to her sole and separate use before she can bind herself, upon the ground that till then she is not a person holding property to her separate use, and her contracts cannot be in respect to such separate property or pertain to it. By this construction, no contract having in view the acquisition of such property or preliminary to a purchase, would be binding. The other would make binding to a married woman all her contracts for the purchase of such property or preliminaries to such purchase, including her contracts for procuring money or other means of making such purchase.”
And referring to a previous case, they say: “And the principles thus settled are approved by the court here and must govern this case. They go to the extent that the powers of the married woman to bind herself by her contract under this statute, aud, as we incline to think, under the statute of 1869, exist only in cases where she is at the time of making the same entitled to hold separate property to her own use, and where the contract relates to that property. From this view it results that she can make no contract for money or property in anticipation of the purchase of such separate estate; and, consequently, the note on which this action is founded, being given for money loaned for the purpose of .'buying such property, was unauthorized by the act, and is not binding on the defendant.”
In Carpenter v. Mitchell, 50 Id., 471, assumpsit against husband and wife on note given for land conveyed to the wife, ra similar opinion was expressed.
It is true that in the case of Stewart v. Jenkins, 6 Allen, 300, this was considered too narrow an interpretation of similar language in the statute of Massachusetts; but that was doubtless because the statute elsewhere permits the acquisition of *547 realty by a feme-covert by purchase, and, by allowing her. also to embark in trade and business, gave her the largest possible scope, and by its manifestly liberal policy invited the most liberal interpretation.
What has been said thus far is not at variance with those cases which make the purchase-money agreed to’ be paid by a feme-covert a charge upon the property, and, to that extent, recognize her contract.
Thus, in the cases of Patterson v. Robinson, 25 Penn. St., 82, and Ramberger's Adm’r v. Ingraham, 38 Penn. St., 146, it was held that where femes-coveri gave judgment bonds for the price of lauds bought by them, they were absolutely void as personal obligations, but they were charges upon the land, because, although by the conveyances, whether the ex-ecutory contracts of purchase were valid or not, the titles were vested in the purchasers, the payment of the purchase-money was a condition of the sale which a court of equity would notice and enforce.’
So, in a case in New York, reported in “ The Albany Law Journal,” viz., Cashman v. Henry, decided in the Court of Appeals, the court, while holding that, under the statutes of 1848 and 1849 of New York, the contract of a married woman to buy land was not valid, say: “ This view of the statute does not, however, involve the injustice of allowing a married woman to obtain the title to land- upon a promise to pay the purchase-price, and then to hold it free from any claim or lien for the purchase-money. Upon the well-settled doctrines of equity, if her bond or other security for the payment of the consideration is void, the land would be subjected * * * * to a lien in favor of the vendor for the unpaid purchase-money.”
I am, therefore, of opinion that the power to make an ex-ecutory contract for the purchase of land cannot be derived from that part of our statute which enacts that a married woman may contract in all matters having relation to her sole and separate property. But it is claimed that this power is given by implication in another part of our laws, viz., in sec *548 tion 727 of tbe Revised Statutes, which declares that the right of any married woman to any property, personal or real, belonging to her at the time of marriage or acquired during marriage, in any other way than by gift or conveyance from her husband, shall be as absolute as if she were unmarried, and shall not be subject to the disposal of her husband, nor be liable for his debts.
It is supposed that the terms “ acquired in any other way than by gift or conveyance from her husband,” convey an implied power to acquire in any other way than by gift or conveyance from the husband.
Is the act an enabling one ? Does it mean to give a power to acquire which did not exist before; or does it mean merely to refer to the known methods of acquiring property by a feme-covert, and to give her new control over the property so acquired ? It must be remembered that there were various ways in which property could be acquired by a feme-covert, such as descent, devise, gift and conveyance. In short, as a passive recipient she could acquire in the -same way as any one else. It was merely as an active contractor that she was debarred from this privilege; so that there was an ample subject-matter for reference to in the words in question,-and ho necessity for supposing that they were intended to create a new method of acquiring property. If the phrase had specified the modes of acquiring, as by saying “ any property acquired by descent, devise, purchase,” &c., as was the case with the New York statute of 1860, the implication of a power to acquire in the modes mentioned would be irresistible ; but it seems to me that, in its present form, the statute simply refers to any mode of acquiring sanctioned by existing laws, and means to impress, the property so acquired with a new kind of ownership in the married woman. The New York statute of 1848, as amended by one of 1849, was that any married female may take by inheritance, or by gift, grant, devise, or bequest, from any person other than her husband, and hold to her separate use, and convey and devise real and personal property, &c., in the same manner, *549 &c., as if she were unmarried, &c., which is the same as saying, in language more resembling our law, that she could hold to her separate use property acquired by gift, grant, &c. Now, here was scope for the most liberal interpretation, and it might have been plausibly contended that by implication she was allowed to acquire in any way; that if she could acquire by grant, which did not necessarily mean a gift, she might contract for the grant. JBut the court, in the above case of. Cashman v. Henry, says that these acts are not enabling acts, but the new capacity given to a married woman was to hold the estate acquired in any of the modes designated as her separate estate, without the creation of a trust or the intervention of trustees, &c.; but it is difficult to hold that the contract of a married woman to pay for a tract of land purchased by her is valid in law or equity. It was not until the term & purchase ” was expressly used in the act of 1860 that such power of contracting was admitted.
The statute of New Hampshire provided that "every married woman shall hold to her own use, free from the interference or control of her husband, all property inherited by, bequeathed, given, or conveyed to her, provided such conveyance, gift, or bequest is not occasioned by payment or pledge of the property of the husband.”
The statute of Illinois very strongly resembles ours. It provides, in substance, “ that all the property which any married woman may own at the time of her marriage, or may acquire during coverture, from any person other than her husband, shall be her sole and separate property, not subject to the control of her husband, nor to the payment of his debts.”
The argument from implication in favor of the wife’s right to acquire property in any other way than by conveyance from her husband would apply to these statutes with as much force as to ours; and yet, as to both of these, it was held, in the cases before referred to, that no power of acquiring by purchase was conferred upon married women.
If a married woman may simply buy real estate on credit, *550 she may give her obligation to pay for it. It will not do to say that it comes to her simply charged with the price, but does not create a personal obligation! That would not be a purchase, but simply a conditional conveyance, which might have been made before the act of 1869 was passed; but a purchase by her on credit is not complete without a promise to pay; and if the law authorizes the one, the other follows. Then there might be some force in the view taken in the Massachusetts case (6 Allen), that the same act which creates the separate property is a contract in relation to her separate property. At all events, such a contract would at least create the separate property, whether it be proper to treat it as a contract- in relation to her separate property or not; and then, when the vendor of the land comes to sue for the price, it is a suit in a “ matter having relation to her sole and separate property,” whether we treat it as a suit on a contract relating to her separate property, or as simply one by which that kind of property is created.
Now, in all such matters the law says she may sue and be sued iu her. own name, in the same manner as if she 'were unmarried; and if she may be sued in the same manner, it must be further intended that the suit shall have the same effect and results; and, in fact, the law further says that judgment maybe enforced by execution against her sole and separate estate, in the same manner as if she were unmarried. But an unmarried woman may be sued generally for the price of land sold her, or on her promissory note given for it, either at common law or in equity; and in such suit judgment is rendered against her personally, and such judgment is not a mere lien on the property for which the promise sued on was given, but is a lien on all her property, and may be executed against anything she possesses. I do not see how this consequence is to be averted, or how it is possible to limit the married woman’s responsibility to the property purchased, if it be once admitted that she -may make an executory contract to purchase realty.
But that a fem.e-covert can incur this liability on an execu *551 tory contract for the purchase of land, as on a note given for the price, seems in conflict with the opinion of the Supreme Court in the case of Seitz v. Mitchell, 4 Otto, 585. Mrs. Seitz, a feme-covert, purchased a lot of ground in her own name, and it was conveyed to her. She borrowed the money to pay for it from an insurance company, and gave her notes for the money so borrowed, jointly with her husband; and he also joined her in executing a deed of trust on this and other property to secure them. It can make no difference that the notes were given for money procured to pay for the property, instead of being given directly for the price; nor can it make a difference that her husband united in the notes; nor can it make a difference that a fraud on the husband’s creditors was supposed to be intended. The alleged fraud consisted in placing the equity of redemption in the wife’s name, when it was intended to be paid for by the husband. Buf these notes were not fraudulent, and were given for a hona-fde indebtedness; and if the feme-covert was capable of making a purchase at all, they were her notes; but the Supreme Court said: “ For the payment of these notes George Seitz is personally liable, and his wife is not;” thus denying any validity to her executory contract of purchase.
Indeed, it seems to me that if the court had recognized this right, they must have sustained her title; for, as to this property, not a dollar of her husband’s means, or even of her own earnings, which belonged to him, had been used in the purchase of the property, but it was paid for by borrowed money, was bought for her separate use, and, so far, no creditor had been defrauded, and under the very terms of our law it ought not to be liable for her husband’s debts.
The case of Sykes v. Chadwick is su'pposed to give countenance to the idea that the act of 1869 conferred the power of acquiring by purchase. Sykes and Chadwick, owning property together, desired to sell it, and, as an inducement to Mrs. Chadwick to release her dower, they executed a note to her for $5,000, on which she afterwards brought suit against Sykes.
*552 The court made use of one very general expression, which, apart from the context, might be misunderstood. They say, page 148: “By the act of 1869 the plaintiff, as a married woman, acquired the capacity at law to receive property to her separate use, and subject to her separate and exclusive control, as if she were unmarried, provided it does not come to her by gift or conveyance from her husband; by which is undoubtedly meant voluntary gift or conveyance. Having this capacity, she did receive and acquire, for a good and valid consideration moving from herself, the promissory notes in question.”
This is supposed to countenance the idea that a new capacity of acquiring property is given to the act. But a further view of the case will show that nothing of this sort was intended to be decided, and that the language must have reference to the new capacity of holding as a feme-sole, and not of acquiring; for it is shown in the opinion that the ri^ht of the wife to secure a separate provision out of her husband’s estate, in exchange for her release of her dower, by even a post-nuptial agreement, had been recognized in equity by the highest authorities; and the court refer to decisions rendered long before any statutes of this kind were passed, sustaining such post-nuptial agreements between husband and wife, even as against the husband’s creditors, to the extent of the value received by him. The right of Mrs. Chadwick to make this arrangement was derived from this established doctrine of equity, and not at all from the statute; but her right to hold' property thus acquired, as a feme-sole, was traced to this statute. And inasmuch as she had thus acquired the property in a way recognized before the law passed as valid, and had not derived it from a gift, of her husband, her right to sue on the note as a feme-sole was sustained. The case, then, is no authority for the proposition that, by implication, the act capacitates a woman for any kind of acquisition of property, other than a gift from her husband. And it does not seem to me that such was its design. It follows from the forego *553 ing considerations that the note sued on here was not a valid contract under our law.
The pleadings do not show where the defendant resides, or where the bond sued on was executed or is payable. We are only left to presume that the contract is to be governed by the law of this place. And if it were otherwise, the law of New York is not in the case by proper averments, so that we could give effect to it.
But it is a fact in the case that the property for which this bond was given is situated in New York. Now, I do not think our statute could, or ever was intended to, operate upon contracts relating to realty in another jurisdiction. It must be borne in mind that a law of this kind is not merely a law touching the personal capacity of the married female, but, as far as it affects real estate, it is also a law touching titles. To illustrate: Suppose we had no such act in force here, but such an act was in force in New York, and a feme-covert in New York should undertake to convey or contract away real estate here, simply descended to her as a feme-sole. It is plain that she could not do it. No conveyancer would advise the acceptance of such a title, because, by our law of real-estate title, a feme-covert could only pass title by deed with her husband, and could not bind the land by contract at all. The New York law of personal capacity would come in conflict with our law of titles, and that of the situs must prevail. Now reverse the case, and it is equally plain that no law passed here could endow a woman with capacity to deal with real estate in another jurisdiction, otherwise, than is permitted by its local laws, and it is not to be supposed that it so intended. If, therefore, this be deemed a contract in relation to separate property situated in another State, it cannot derive validity from our law. It may be different with personal property, which has no locality but the domicil of the owner.
If, on the other hand, this be deemed a personal contract, and as such invalid under our laws, if it was made here, and this is the domicil of the defendant, which is all that we can *554 presume from the face of the record, it would not help the plaintiff’s case to show that by the law of New York such a contract would be valid, because the law of the domicil governs as to the capacity of persons to contract there. (Story’s Conflict of Laws, 65, 96, 99.)
I am of opiniou that the demurrer in this case must be sustained.
Mr. Justice MacArthur
said, in substance:
I agree that the demurrer must be sustained, for the reason that the declaration affirmatively discloses the facts that the defendant is a married woman, and that her separate estate is situated in the city of New York; butl am unable to concur in the interpretation of our statute, concerning the rights of married women to property, announced in the learned opinions of my brethren. The - question arising on this point of difference is whether a married woman can execute a valid contract to pay for property which she acquires by purchase. At common law her bond is void. In this respect the statute has made a radical change, for she can now contract in her owm name in all matters having relation to her separate property. She may also acquire real or pei’sonal property in any way except from her husband, and there is no other limit to the mode in which she may receive it. The object of the statute was to displace a system of oppressive restraint, to enlarge her power of receiving and disposing of property, and to protect her individual interests the same as if she were an unmarried woman. The same purpose, to a large extent, had been recognized in courts of equity long before this legislation took place. Equity first invented trusts for the separate use of married women, and asserted her power of holding and acquiring property, and as incident to such power her separate estate was held liable for the paynient of all debts contracted by her upon its credit. (Church v. Jacques, 3 John. Ch. R., 77; 17 John., 548; Gardner v. Gardner, 7 N. Y., 112; Yale v. Dederer, 18 N. Y., 265; 2 Rope on H. and Wife, 239.) “ If a court of equity says a feme-covert may have a separate *555 estate, the court will bind her to the whole extent as to making that estate liable to her own engagements; as, for instance, for the payment of debts,” &c. (Hulme v. Tenant, 1 Bro. C. R., 16.) They will not render a personal decree out of deference to the common law; yet in the case just cited the joint bond of a husband and wife was held not only to be valid as to her, but to be a charge upon her separate estate. The same rule was laid down in Peacock v. Monk, 2 Ves., 190, and it is there decided that a feme-covert acting with respect to her separate property is competent to act in all respects as a femesole. And Mr. Justice Story observes that in “ the earlier cases the doctrine was put upon the intelligent ground that a married woman is as to her separate property to be deemed a feme-sole; and therefore that her general engagements, although they would not bind her person, should bind her separate property. This, however, is not the modern doctrine; for by that it seems to turn upon the intention of the married woman to create a charge upon her separate estate, either as an appointment, or of a disposition of it by a contract in the nature of an appointment.” (2 Story Eq. Jur., sec. 1401.) To the same effect are Conway v. Smith, 13 Wis., 125; Hauptman v. Cullan, 20 N. Y., 243.
The rule in equity that a married woman is to he regarded as a feme-sole in regard to her separate estate is established by numerous authorities, and that consequently she may enter into executory contracts, as a bond, note, or mortgage security, with reference to her property, and that this power of contracting was necessarily implied in the power of holding and enjoying a separate estate, and was absolutely indispensable to its beneficial use. If, therefore, a feme-covert obtained property by grant or purchase through the expedient of a trustee, it may be assumed that in equity her bond for the payment of the consideration would be good as to her separate estate, if she indicated an intention of contracting in regal’d to it, or upon its credit, without the authority of auy statute. Now, the effect of the statute in regard to the same transaction, under the same circumstances, is to make her *556 bond as good in law as it had before been in equity. It is impossible to contend that Congress has not given a married woman the power of contracting in law in any manner that she could under the rules of equity without a statute. Surely if it were not intended to enlarge her capacity, it would at least not be claimed that she is entitled to less aid under the statute than she received by the application of equitable principles before it was enacted. If, for instance, the defendant had purchased the property within this jurisdiction and taken a conveyance to a trustee for her separate use, a court of equity would undoubtedly have made the bond a charge upon her separate estate in any proper proceeding in which it could exercise jurisdiction. It seems to me that the purpose of the Legislature was to give her a legal capacity of contracting as indispensable to her power of acquiring property; and it is a fatal misconception to talk of her acquiring property, as if unmarried, without the correlative power of contracting in the ordinary way.
I am aware that in several of the States having statutes similar to our own, it has been decided that an action at law cannot be maintained upon the obligation of a married woman given upon the purchase of land. (Yale v. Dederer, 18 N. Y., 265; 22 Id., 450; Howe v. Wilder, 34 Maine, 566; Jones v. Crossthwaite, 17 Iowa, 893; Ames v. Foster, 42 N. H., 381; Wooster v. Northrup, 5 Wis., 245.) These decisions proceed upon the ground that a married woman cannot render herself liable for the payment of property by an executory contract, and that her common-law disability to bind herself personally for the payment of debts has not been removed by these acts of legislation. The courts in New York held, however, that a feme-covert purchasing property, but executing no covenant or agreement on her part for its payment, might take and hold the property to her sole and separate use, independent of her husband, although there were no means of compelling her to pay the consideration, and that the transfer would be valid whether she had antecedently any separate estate or not. (Darley v. Callaghan, 16 N. Y., 71; and al *557 though the purchase was. on credit, Knapp v. Smith, 27 Id., 277; Draper v. Stanvcnd, 35 Id., 507.) These rulings were with reference to the acts of 1848 and 1849. Later acts, in 1860 and 1868, authorized a married woman to acquire property by grant, devise, or purchase, and to engage in a trade or business on her own account; so that under the existing statutes in that State a wife may acquire property on credit, and her contracts in relation to such property are as binding upon her and upon her separate estate as if executed by an unmarried woman. Under similar laws in Massachusetts it has been held that a promissory note given by a married woman for land conveyed to her, to her sole and separate use, is a valid contract. (Stewart v. Jenkins, 6 Allen, 300.) And there has been the same ruling upon a promissory note given by her for money borrowed to enable her to pay for land, and actually applied by her to that purpose. (Chapman v. Foster, 6 Allen, 136.) Cases like these are in conformity to the intention and policy of the law, and the same tendency of liberal construction should be applied here, where the question has not heretofore been raised.
There is nothing in our statute which forbids the right of a married woman to acquire property by purchase, and we are construing it on that point for the first time. I do not think we should allow the decisions in other States to rule our judgment as if binding. They are to be considered with respect, but not as authority; for they relate to local laws, and not to general jurisprudence. Especially we should not lay much stress upon them when they are based more upon the indecorous rules of the common law in regard to married women than upon the spirit and design of recent legislation.
By the statutes of New York,.and those of several other States, a married woman may take by gift, grant, or devise. The language of our own is broad enough to include all of these, as well as that of purchase; and there is nothing which excludes the word purchase, any more than of the words gifc or devise; and it has been repeatedly held that under statutes as general in expression as our own, a married woman is *558 capable of receiving property by gift or devise. If sbe can take a conveyance in any mode by which property is acquired, she can in all; for there is no limitation in our statute, except that it is not by gift or conveyance from her husband. This very power implies that she can give an obligation to pay for it. To say that she may take by gift or devise, and not by purchase, is to restrain the plain and ordinary meaning of language. The first impressions that prevailed in JMew York, that a wife could buy, but could not pay, are unworthy of serious consideration, and were corrected by the Legislature of that State nearly as soon as they were announced. Congress had observed this judicial reluctance to remove common-law incapacity of married women in New York, and the other States which followed her lead, and, quite likely from deliberate purpose, used the language in the statute conferring upon married women the legal capacity of receiving property during marriage iu any way, without any limitation but that of the husband. It seems forced and extravagant to say that under this provision she may not take by purchase as well as by gift.
In Sykes v. Chadwick, 18 Wall., 141, an action at law by a married woman was maintained on a promissory note given to her by the defendant, who had purchased her dower interest in the real estate of her husband, who also signed the note as a maker. The court held that this note constituted her separate estate, and that by the act of 1869 she acquired the capacity at law to receive property to her separate use, and that she was relieved from the incapacity which the common law imposed upon her, and is as if she were unmarried; that the surrender of her right of dower was a consideration for the note, and that she could maintain an action at law to enforce its collection. It is thus judicially declared by the Supreme Court, in a case that went up from this court, that the statute now in force within this District enabled the wife to dispose of her separate estate by conveyance, and take an executory contract for the purchase-money; and that the technical rules of the common law no longer exist in such *559 case. This adjudication goes far to emancipate our statute from the narrow construction to which similar laws have been subjected elsewhere. If a married woman may dispose of her whole separate estate, and take a note for the price, it would seem to follow that she could give the same evidence of indebtedness wheu she is the purchaser instead of the seller. Is it not capricious to say that a note is good when she receives, but void when she gives it ?
But having sufficiently vindicated my reasons why I am unwilling to concur in the views of my brethren in regard to the true meaning of this statute, I have only to repeat, that I concur in the judgment on the ground indicated in the beginning.