Dayton vs. Walsh.

TAYLOR J., dissents.

## DAYTON vs. WALSH.

MARRIED WOMAN. *When crops, raised on wife's land with husband's aid, not liable for his debts.*

A married woman, having at the time no separate estate, purchased a farm of a stranger entirely on credit, giving her notes for the price, secured by mortgage of the property. Her husband lives with her on the farm, and controls the farm labor, carrying on the business in her name and as her agent, without any agreement as to his compensation for such services, and from the proceeds of the crops raised on the farm she has paid one year's interest on the purchase money, and a certain amount of the principal. The purchase by her having been made in good faith, and not as a means of fraudulently placing the husband's property beyond the reach of his creditors: *Held*, that under the statutes of this state (ch. 44, Laws of 1850, and ch. 155, Laws of 1872; R. S. 1878, secs. 2342–3), crops raised upon said farm by their joint labor and management, belong to the wife, and are not subject to sale for the husband's debts. *Feller v. Alden*, 23 Wis., 301, followed, and *Lyon v. Railway Co.*, 42 id., 548, distinguished.

VOL. XLVII. — 8

APPEAL from the Circuit Court for *St. Croix* County.

Action for the wrongful taking and detention of chattels, consisting of grain and an agricultural machine. The facts are sufficiently stated in the opinion. Upon a finding of those facts the circuit court held the defendant entitled to the possession of the grain, and rendered judgment in his favor; from which the plaintiff appealed.

For the appellant, there was a brief by *Baker & Spooner*, and oral argument by *Mr. Spooner*. They contended, 1. That under sec. 3, ch. 95, R. S. 1858, and ch. 155, Laws of 1872, the land purchased by and conveyed to the plaintiff was her own property, notwithstanding the fact that it was purchased upon credit, and had to be paid for from her own earnings, and the notes given by her were enforceable against her as if she were a single woman. *Conway v. Smith*, 13 Wis., 138; *Stimpson v. Pfister*, 18 id., 276; *McVey v. G. B. & M. Railway Co.*, 42 id., 532. So far as *Wooster v. Northrup*, 5 Wis., 245, held a contrary doctrine, it has been overruled by the later cases (*Rogers v. Weil*, 12 Wis., 664), and rendered inapplicable by the act of 1872. The New York statute of 1848, which, excepting two immaterial words, is identical with ours, is construed as authorizing a married woman to purchase real or personal property on credit. *Darby v. Callaghan*, 16 N. Y., 71; *Knapp v. Smith*, 27 id., 277; *Buckley v. Wells*, 33 id., 518; *Gage v. Dauchy*, 34 id., 293; *Draper v. Stouvenel*, 35 id., 507; *Abbey v. Deyo*, 44 id., 343; *Herrington v. Robertson*, 71 id., 280. See also Wells on Sep. Prop. of Married Women, 240 et seq.; *Huyler's Ex'rs v. Atwood*, 26 N. J. Eq., 504; *Bongard v. Core*, 82 Ill., 19. Even if the law were as held in *Wooster v. Northrup*, and the purchase money could not be collected on plaintiff's notes, that would be a matter entirely between her and her vendor, not affecting her ownership or rights as to the world at large. *Ramborger v. Ingraham*, 38 Pa. St., 146; *Patterson v. Robinson*, 25 id., 82; *Darby v. Callaghan*, and *Knapp v. Smith*, supra. There was no allega-

tion, proof or finding of fraud in the purchase, and there is no pretense that plaintiff's title of record is merely colorable. 2. That if the plaintiff was the owner of the farm, she was the owner of crops raised thereon for her under the management of her husband as her agent. If the husband had any interest in them, it was at most for the value of his labor and services, which can be ascertained only in an equitable proceeding. *Feller v. Alden*, 23 Wis., 301; *Rush v. Vought*, 55 Pa. St., 438. But he had no interest that could be reached by creditors. *Abbey v. Deyo*, *supra*. 3. That if plaintiff did not become owner of the land, and consequently of the crop, certainly her husband did not, but the title remained in her grantor of the land, by whom she was put in possession, and under whom she was in possession at the time of the levy, entitled to hold as against all the world except such grantor. *Darby v. Callaghan*, *supra*.

For the respondent, there was a brief by *N. H. & M. E. Clapp*, and oral argument by *N. H. Clapp:*

1. Evidence was properly admitted to show the husband's interest. Under a general denial, defendant in replevin may show title to the property in himself or a stranger. *Timp v. Dockham*, 32 Wis., 146. Where a debtor has placed the title to his property in some third person without consideration, and with intent to defraud his creditors, whether by his own direct act or conveyance or by a conveyance made by some person at the debtor's request, the creditors or those representing them may seize the property, and, in replevin against them, may show the debtor's real interest. *Osen v. Sherman*, 27 Wis., 501; *Godfrey v. Germain*, 24 id., 410; *Auble v. Mason*, 35 Pa. St., 261; *Walker v. Reamy*, 36 id., 410; *Robinson v. Wallace*, 39 id., 129. If the plaintiff holds title to the land in trust for her husband, and the *cestui que trust* is in possession and carries on the farm, do not the crops belong to him? 2. That the facts found sustain the conclusions of law. (1) In contests like this, the wife's claim is looked upon

with suspicion, and must be clearly proven. *Stanton v. Kirsch,* 6 Wis., 338; *Horneffer v. Duress,* 13 id., 603; *Weymouth v. Railway Co.,* 17 id., 550; *Price v. Osborn,* 34 id., 40. (2) That a married woman may acquire a separate estate by purchase, and hold it against her husband's creditors, she must pay for it out of funds derived from some person other than her husband; and if the purchase price is acquired through the husband, as if the property is paid for with the husband's earnings, or with the joint earnings of husband and wife, then, in a contest between her and the husband's creditors, she cannot recover. *Gamber v. Gamber,* 18 Pa. St., 363; *Walker v. Reamy,* 36 id., 410; *Auble v. Mason,* 35 id., 261; *Farrell v. Patterson,* 43 Ill., 52; *Manny v. Rixford,* 44 id., 129; *Carpenter v. Tatro,* 36 Wis., 297. The findings show that plaintiff had no separate estate to invest in the land, and that the whole transaction was really a redemption of the land from mortgages given upon it by the husband, which redemption is to be effected by using proceeds of crops raised on the land under the husband's direction, and by the joint labor of husband and wife. Crops raised under such circumstances must be held, in a contest of this character, to belong to the husband. See, beside the authorities already cited, *Fitzpatrick v. Borbridge,* 2 Brews. (Pa.), 559; *Bucher v. Ream,* 68 Pa. St., 421; *Hallowell v. Horter,* 35 id., 379; *Baringer v. Stiver,* 49 id., 129; *Glidden v. Taylor,* 16 Ohio St., 509; *Quidort v. Pergeaux,* 18 N. J. Eq., 472; *Bear v. Hays,* 36 Ill., 280; *Wilson v. Loomis,* 55 id., 352; *Patton v. Gates,* 67 id., 165; *Hume v. Scruggs,* 4 Otto, 22; *Moore v. Jones,* 13 Ala., 296; *Holly v. Flournoy,* 54 id., 99. The notes given by the plaintiff were no part of her separate estate; they were void in law, and could not be made a charge on any separate estate she might thereafter acquire; and the only remedy of the payees would be to recover the land by foreclosing the mortgages. *Wooster v. Northrup,* 5 Wis., 245; *Brown v. Hermann,* 14 Abb. Pr., 394. The case of *Feller v. Alden,* 23

Wis., 301 (holding that the husband's interest could be reached only in equity), if not overruled by *Lyon v. G. B. & M. Railway Co.*, 42 Wis., 548, is still not applicable here, because there it was conceded that the land belonged to the wife. See *Feller v. Alden*, on p. 304; *Robinson v. Wallace, supra*.

COLE, J. This is a contest between the plaintiff, a married woman, and her husband's creditor, for certain crops grown upon a farm the title of which is in her    It appears that the plaintiff, having no separate estate, purchased the farm of a third party, paying nothing down, but giving her own note and a mortgage on the premises conveyed, to secure the payment of the purchase money. There is no claim nor pretense that the purchase by the plaintiff was not a perfectly fair, honest, *bona fide* transaction, free from all imputation of fraud, unless the law condemn such a purchase upon credit. The husband of the plaintiff lives with her on the farm, assumes the direction and control of the business so far as relates to the farm labor, but carries on the business in the name of the plaintiff, as her agent, and without any agreement as to his compensation for services rendered. The plaintiff has paid, from the proceeds of the crops raised upon the farm, one year's interest on the purchase money, and, in addition, made a payment of $200 to apply on the principal; and it is admitted that the crops in question were produced by means of the joint labor and management of the plaintiff and her husband. These are the material facts upon which the question of law arises. Can, then, a married woman, under the laws of this state, who has no separate estate, purchase of a third person, upon credit, a farm; take the title in her own name, and hold it for her own use and not for the use of the husband; carry on the farm by means of the agency of her husband, who is employed by her to manage the business, but without any specific agreement as to his compensation; and hold and retain the crops thus raised as her own? Or do the

crops under such circumstances become liable for the debts of her husband?

The doctrine is elementary, that at common law a married woman had capacity to take real and personal estate, by grant, gift or other conveyance, from any person other than her husband. Equity sustained conveyances to the wife direct from the husband, where the rights of creditors did not intervene. *Putnam v. Bicknell*, 18 Wis., 333; *Pike v. Miles*, 23 Wis., 164; *Hannan v. Oxley*, id., 519. As to the real property, at common law, where no trust was created, the husband took the rents and profits during coverture, or for life where there was issue of the marriage; while as to the wife's personal property, he became the absolute owner providing he reduced it to possession during coverture. But this rule of the common law in respect to the rights of the husband in the property of the wife was changed by statute more than a quarter of a century ago. See chapter 44, Laws of 1850. By this enactment it was provided, that a married woman might hold as her own separate estate any real or personal property belonging to her at the time of her marriage, and might likewise receive, by inheritance, gift, grant, devise or bequest, from any person other than her husband, and hold to her sole and separate use, any real or personal property, or interest or estate therein, and the rents, issues and profits thereof, in the same manner and with like effect as if she were unmarried; and the same should not be subject to the disposal of her husband, nor be liable for his debts.

This statute removed many of the disabilities which a married woman was under at the common law, and secured to her the full use and enjoyment of her separate estate. See *Conway v. Smith*, 13 Wis., 125; *Feller v. Alden*, 23 Wis., 301; *Beard v. Dedolf*, 29 Wis., 136; *Hoxie v. Price*, 31 Wis., 82; *Fenelon v. Hogoboom*, id., 172. In *McVey v. Green Bay & Minnesota Railway Co.*, 42 Wis., 532, we had occasion to put a construction on the word "grant" as used in this stat-

ute; and it was decided that it included a deed of bargain and sale to a married woman, executed by a stranger, and that a married woman, under such a conveyance, might acquire title to land by purchase, and hold it as her separate estate, if it really were such.   But in that case no question arose as to the power of a married woman, having no separate estate, to purchase on credit, as in this case; because the court held that, in the absence of all proof upon the subject, the presumption was that the consideration was paid by the grantee when the conveyance was executed.   Of course, in all cases where the consideration was in fact paid by the wife out of her separate estate, the purchase was good and valid.   Notwithstanding the legislature had thus secured to the wife the full use and enjoyment of her separate estate, and clothed her with power to make legal contracts with respect to it, still her earnings belonged to the husband, unless, either from drunkenness, profligacy or other cause, he neglected or refused to provide for her support. *Stinson v. White*, 20 Wis., 562; *Edson v. Hayden*, id., 683.   But by chapter 155, Laws of 1872, the individual earnings of a married woman, except those accruing from labor performed for her husband, are declared to be her separate property, and not subject to her husband's control, nor liable for his debts.   This being the state of the statutory law, it follows, and has in fact been so ruled, that a married woman may now carry on business in her own name and for her own benefit; may make valid contracts in respect thereto, which may be enforced at law in actions against her; and may enjoy and have the advantage of all the profits arising from such business, in the same manner as though she were sole. *Meyers v. Rahte*, 46 Wis., 655.   If she have a separate estate, it would not be claimed that she could not purchase real or personal property, either for cash or on credit, to use in carrying on trade or business, and increase her profits.   Nor will it be denied, if she have no such estate, that she might get or

acquire property by her labor, skill or talents, and hold and enjoy it as "*earnings*," for so the law declares.

Dr. Webster defines " earnings " to be that which is earned; that which is gained or merited by labor, services or perform-ances; wages or reward. We know that some gifted women acquire or earn large sums of money by their writings or works of art, or by singing or performances on the stage. Others, again, make wealth in carrying on trade, or by sagacious and well directed efforts in some branch of industry. These earn-ings and profits the law of this state secures to the married woman as her separate property. Now, suppose a married woman is a seamstress, having no estate of her own: may she purchase a sewing-machine by means of which she may increase her earnings and make her labor more profitable? Or if she be a music teacher, may she buy a piano-forte upon which she can give music lessons? Does not the law allow her to buy these things on credit, and acquire a separate estate by her earnings? It seems to us it does. It is but another application of the same principle, to permit her to lease or buy a house upon credit, in which she may keep a private school, or earn money in keeping boarders; or to permit her to buy a farm in the same manner, and raise stock or grain, and thus acquire a separate estate. It is in perfect accord with the spirit of all the legislation in regard to the property rights of married women, to enable her to do these things. It is said that these statutes are remedial in their character; intended to remove the disabilities which the common law attached to married women, and were designed to enable them to have, hold and acquire property which they could call their own, and to earn something for themselves by their skill and labor. They are therefore to be liberally construed to secure the object of their enactment. *McVey v. The Green Bay & Minn. Railway Co., supra.* There can be no doubt that the title to the farm in this case vested in the plaintiff by the conveyance

Dayton vs. Walsh.

made to her, the same as though she antecedently had a sepa-
rate estate with which to pay the consideration. Now may
she not hold and enjoy the proceeds of the farm as her own
property? Probably, if she had not used the agency of her
husband to carry on the farm and aid in raising the crops, it
would not be claimed that he had any interest in them which
his creditors could seize upon an execution. But, if the wife is
the real owner of the premises, is there any legal objection to
her employing her husband as an agent to manage the business
for her? There is doubtless more or less reason to suspect the
fairness and honesty of such an arrangement, and it should be
closely scrutinized to see that it is not a cover for fraud — a
mere device to place the husband's property beyond the reach
of creditors. But where the purchase by the wife is really
*bona fide*, she being the real owner of the property, we do not
think the law imputes fraud, or condemns the transaction, from
the mere fact that the wife had no separate estate when she
made the purchase, and therefore, from necessity, made it
wholly on credit.

In *Feller v. Alden, supra*, the wife owned land as her sepa-
rate estate, and cultivated it by means of the agency of her
husband and the labor of her minor children. It was held
that the legal title to the products and proceeds of the farm
was in the married woman, so that they could not be levied on
under an execution against her husband. It was said that the
wife was at liberty to avail herself of the agency of her hus-
band to manage her separate estate, and still the produce thereof,
with the increase of stock, would belong to her. It is sug-
gested on the brief of counsel for defendant, that the doctrine
of that case has been overruled by the subsequent decision in
*Lyon v. Green Bay & Minn. Railway Co.*, 42 Wis., 548; but
that is a mistake. The Lyon case was an action of trespass by
the wife for injuries to the grass and crops on her land. This
court thought the evidence showed that the husband received
the proceeds of the land, and was the real owner of the crops,

and was the party to bring an action for an injury to them. There is no conflict between the two decisions, as we understand them.

We do not deem it necessary to comment upon the decisions in other states, to which we were cited on the argument, many of which were made under statutes unlike our own.

The question presented is purely one arising upon our own statute, and we feel at liberty to give it that construction which will best meet the object of the legislature in enacting it.

It follows from these views, that the judgment of the circuit court must be reversed, and the cause must be remanded with directions to give judgment for the plaintiff for the return of the property or its value.

*By the Court.*— So ordered.