Krouskop vs. Shontz and husband.

KROUSKOP vs. SHONTZ and husband.

*January 12 — February 8, 1881.*

PROMISSORY NOTE. *(1, 2) Immaterial alterations.*
MARRIED WOMAN. *(3, 4) Her power to contract on credit of separate estate.*

1. The words, "This note to be extended if desired by makers," indorsed upon a note, are too indefinite to have any legal significance; and the unauthorized addition thereto, by the holders, of the words, "on payment of the interest, as expressed, until January 1, 1879," would not affect the note.

2. Where, upon a promissory note of a husband and wife for $140, there was indorsed a property statement by the wife, as a basis of the credit given, showing that she owned a farm worth $4,000 and personal property worth $600, a subsequent unauthorized change of the last figures to $1,000, made by the holders, *held* not a material alteration of the note.

3. Where husband and wife engage together in the "business" of carrying on a farm of the wife, and purchase goods for the use of themselves and their family on the credit of such property as her separate estate, she, as well as her husband, becomes liable for such goods in an action at law, in all respects as if she were unmarried; and this whether the evidence of the contract is wholly written or wholly oral, or partly written and partly oral.

4. The rights, powers and remedies expressly given to married women by statute, include, by necessary implication and as incident thereto, the legal power to do such acts, make such contracts, and resort to such remedies, as are necessary or convenient to the beneficial enjoyment of the rights, powers and remedies so expressly given.

ORTON, J., dissents from the judgment.

APPEAL from the Circuit Court for *Richland* County.

On the 12th of June, 1878, the defendants, who were husband and wife, executed their promissory note, payable on or before December 1, 1878, to M. A. Buckley or order, for $140, with interest at seven per cent. after due. The plaintiff purchased the note before due, for value, of Buckley, who indorsed the same without recourse. Judgment was recovered by the plaintiff in justice's court, and also in the circuit court. On the back of the note, as offered in evidence, were written at the top these words: "This note to be extended, if desired by makers, *on payment of the interest as expressed until January 1, 1879.*"

It was claimed by the defendants, on the trial, that the words not in italics were put there at the time of making the note, but that the words in italics were put there subsequently, and without their knowledge or consent. Lower down on the back of the note was a printed blank property statement, filled up and signed by *Mrs. Shontz* at the time of making the note, and which at the time of the trial was as follows:

"*Desiring to obtain credit as per within note,* I hereby state that I own in my own name 93 acres of land in the county of Richland, state of Wisconsin, deed of which is recorded in the office of the register of deeds at Richland Center; that the said land is worth $4,000. The entire incumbrance on said land is none. I also own in my own name, over and above my indebtedness, $1,000 worth of personal property, which is unincumbered by chattel mortgage or otherwise. R. K. SHONTZ."

It was claimed by the defendants, on the trial, that instead of "$1,000," the amount originally written was $600; that *Mrs. S.* owned all the farm except the homestead, and all the property on the farm; that she and her husband carried on the farm and dairy business thereon together, and supported the family therefrom; and that the note was given for cloth for family use — four pieces of men's cloth, one piece of calico, one piece of factory, four dress patterns and two shawls, etc.

Defendants appealed from the judgment of the circuit court.

For the appellants there was a brief by *Hazelton & Provis* and *Eastland & Son,* and oral argument by *Mr. Provis.*

For the respondent there was a brief by *O. F. Black,* and oral argument by *Wm. F. Vilas.*

CASSODAY, J. The first error assigned is the refusal of the court to allow the defendants to prove that the written indorsement on the back of the note had been changed, as above indicated. Assuming that the indorsement, at the time of making the note, was just as claimed by the defendants, to wit, "This note to be extended if desired by makers," yet it would

seem to be without any legal significance. The indorsement contained no definite agreement. Not only were the admitted words without significance, but the words claimed to have been subsequently added were equally without significance, as they merely added an immaterial condition to words which were too indefinite to constitute a binding agreement.

In *Blake v. Coleman*, 22 Wis., 415, the indorsement in effect made the payment of the note conditional upon the sale of certain property at a fair price. PAINE, J., there said: "It may be shown by parol that the indorsement was on the note at the time it was signed; and that being so, it became a part of it and turned it into a mere agreement. . . . As this condition qualified the note, the action could not be sustained without showing that it had been fulfilled." This view of the law is undoubtedly correct; but, after a careful examination of all the authorities cited by counsel, we fail to find any case going to the extent of holding this alleged indorsement to be a material qualification of the body of the note. Some of them are too remote in their bearing to require attention.

In *State v. Stratton*, 27 Iowa, 424, the memorandum was: "When the said Brown sells $50 worth of the water elevator, and pays $25, this note to be considered paid." In *Wait v. Pomeroy*, 20 Mich., 425, the memorandum was: "If the machine should not be delivered, this note not to be paid." In *Johnson v. Heagan*, 23 Me., 329, the memorandum was to the effect that the note should not be collected until a person named took it up himself. In *Barnard v. Cushing*, 4 Met., 231, the memorandum was: "We agree not to compel payment for the amount of this note, but to receive the same when convenient for the promisors to pay it;" and this was signed by the payees. Thus, in each of the cases referred to, the memorandum contained an important qualification of the contract.

In *Palmer v. Sargent*, 5 Neb., 223, cited on the part of the defendants, the alleged memorandum was in these words: "This note is given upon condition;" and the court "held

that it did not vitiate the instrument, inasmuch as they were entirely immaterial." So, here, we must hold that, assuming the words "This note to be extended if desired by makers" were written upon the back of the note at the time of its execution and a part of it, yet they are too indefinite to constitute any material qualification of the agreement contained in the body of the note, and hence the subsequent addition of the words, " on payment of the interest as expressed until January 1, 1879," was not a material alteration of the note.

The alleged change in the property statement is immaterial, as the farm and $600 were just as good as a basis of credit as the farm and $1,000, and in that respect alone could it be material.

The other errors assigned were all based upon the theory that, as *Mrs. Shontz* was a married woman, she could not bind herself nor her separate estate by joining with her husband in making the note in question in consideration of the goods received for the use of the family as stated. If counsel's theory is correct, then the instructions given were clearly erroneous; otherwise not. Prior to the married woman's act, so called, the husband and wife were but one person in law, and the husband was that one. The common law implied not only a unity of person but a unity of interest, and that too was represented by the husband.

In *Conway v. Smith*, 13 Wis., 125, the note was signed by Mrs. and Mr. Smith, and given for work done and materials furnished in the construction of a hotel upon a lot belonging to Mrs. Smith; and a majority of the court, per PAINE, J., held "that our statute did give to married women, as necessarily incidental to the power of holding property to their own use, the power of making all contracts necessary or convenient to its beneficial enjoyment, and that such contracts are to be regarded as valid in law." Page 136. The learned justice then added: "If it be established, then, that her contracts respecting her separate estate are valid in law, I think

it' necessarily follows that they may be enforced by legal reme-
dies." The court there, however, did not go to the extent of
holding that the statute gave to a married woman an unlimited
power of contracting, and that all her contracts were enforceable
by action at law, but only that a limited power of contracting
was conferred by the statute, and that such contracts as came
within the limitation could be enforced by legal remedies, in
contradistinction to equitable.

In *Todd v. Lee*, 15 Wis., 365, the action was in equity, to
charge the separate estate of Mrs. Lee for the purchase price
of goods sold to her for her use, as a trader in the millinery
business, upon the faith and credit of her separate estate.
The circuit court held that the plaintiffs had no legal or equi-
table claim against her or her separate estate; but the judg-
ment was reversed by this court, and Dixon, C. J., said, that
"the contracts of a married woman, when necessary or con-
venient to the proper use and enjoyment of her separate estate,
are binding at law. *Conway v. Smith*, 13 Wis., 125. All
her other engagements stand as before the passage of the
statute, good only in equity. The change from an equitable
to a legal estate has not, with respect to them, enlarged her
powers or removed the disability of coverture; but she re-
mains as if still possessed of an estate in equity, without
restriction as to her power of disposition. . . . The debts
in question belong to the latter class. Within all the authori-
ties, the separate estate of a married woman will be charged in
equity with the payment of debts contracted for her benefit.
In this case we need not inquire further, for that the debts in
question were beneficial to Mrs. Lee will readily appear."
Page 380. In that case this court approved *Yale v. Dederer*,
18 N. Y., 265, in which the wife signed a note as surety of the
husband, and wherein it was held "that a married woman,
having a separate estate, might bind it by her *general* engage-
ments to pay debts contracted for the benefit of such estate,
or on her own account, or for her benefit, upon the credit of

it." Pages 368, 369. But the court disapproved of *Yale v. Dederer*, 22 N. Y., 450, in which the wife was also a surety on the note of her husband, and wherein it was held that, " in order to create a charge upon the separate estate of a married woman, the intention to do so must be declared in the very contract which is the foundation of the charge, or the consideration must be obtained for the direct benefit of the estate itself." Since that time the statutes of New York have been modified in some respects. We have no design of attempting to reconcile the numerous decisions of the New York courts upon this question, although we have carefully examined several from the court of appeals, but rather to preserve the consistency of our own. By way of reference we cite: *Ins. Co. v. Babcock*, 42 N. Y., 613; *Maxon v. Scott*, 55 N. Y., 247; *Manhattan Co. v. Thompson*, 58 N. Y., 80; *Smith v. Dunning*, 61 N. Y., 249; *Yale v. Dederer*, 68 N. Y., 329; *McVey v. Cantrell*, 70 N. Y., 295; *Eisenlord v. Snyder*, 71 N. Y., 45; *The Bank v. Blake*, 73 N. Y., 260; *Woolsey v. Brown*, 74 N. Y., 82; *Cashman v. Henry*, 75 N. Y., 103. Some of these cases are actions at law.

In *Maxon v. Scott* it was held that " the charge of a debt contracted by a married woman upon her separate estate is not a *specific* lien, but is enforceable against *all* such property as she may have at the time satisfaction is demanded. A writing is not necessary, therefore, to create such a charge upon her estate, but it may be created by a parol contract, made upon a good consideration." This was held in a case where a wife engaged board for herself and husband, promising to pay for the same, and to charge her separate estate therefor, and the contract was held binding, and a verdict directed accordingly.

In *Smith v. Dunning* it was held that it was " not necessary to set up in the complaint her coverture, or that she has a separate estate, but the action may be brought and judgment perfected in the same manner and form as if she were a *feme. sole*."

In *Mc Vey v. Cantrell* it was held that " where a married woman, having a separate estate, borrows money for the avowed purpose on her part of applying the same to the benefit of her estate, and the loan is made and her promissory note taken for the amount in reliance upon such representation, her estate is liable, and an action may be maintained against her upon the note, although the money borrowed was not in fact applied for the benefit of such estate."

In *The Bank v. Blake* it was held that where a married woman indorsed upon a promissory note these words, " I hereby charge my separate and personal estate for the payment of the within note," it did " not constitute a mortgage in any sense," and was " simply personal security," but was nevertheless a " valid agreement on her part, based on a sufficient consideration, and binding."

In *Woolsey v. Brown* it was held that " a married woman is not disqualified from executing as surety an undertaking upon appeal; and where she contracts in such form as to make the undertaking binding upon her estate, and the obligation may be enforced in an action at law, a resort to a court of equity is not required."

In *Cashman v. Henry* a married woman, as grantee, by the terms of her deed assumed and agreed to pay a mortgage upon the premises conveyed, as part of the consideration of the conveyance, and although she had no separate estate prior to such conveyance, and was not engaged in any trade or business on her own account or otherwise, yet she was held to be personally liable to pay the mortgage debt.

Turning to our own decisions, we find that in *Todd v. Lee*, 16 Wis., 480, where the opinion was written by the present chief justice, and the former decision in the case was adhered to, it was held that the charge upon the wife's separate estate became binding, not upon the theory that it constituted a specific lien, but that the " payment of a debt thus contracted by a *feme covert* on the faith of her separate estate will be

enforced as well against the separate estate which she may thereafter acquire, as that which she had when the debt was created." That case was followed and approved in *Mahler v. Wise*, 23 Wis., 300.

In *Leonard v. Rogan*, 20 Wis., 540, an attorney brought an action against a married woman for services rendered as such attorney, at her request, in reducing to her possession her separate estate, and she was held liable. DIXON, C. J., speaking for the court, said: " We think the contract is one which is obligatory upon Mrs. Rogan *at law*, within the doctrine of *Conway v. Smith* and *Todd v. Lee*. It would also seem to be one of the essential attributes of the unqualified dominion given by statute to a married woman over her separate estate, not only that she should be capable of entering into a contract of this nature with reference to such estate, but that such contract should be binding at law."

In *Meyers v. Rahte*, 46 Wis., 658, the cases of *Conway v. Smith*, *Todd v. Lee*, and *Leonard v. Rogan*, were again expressly approved. So again in *Dayton v. Walsh*, 47 Wis., 113.

In the leading case of *Hulme v. Tenant*, 1 Brown's Ch., 16, decided by Lord Chancellor THURLOW more than a hundred years ago, the wife signed a bond jointly with her husband. It was held, in equity of course, " that the general engagement of the wife shall operate upon her personal property, shall apply to the rents and profits of her real estate, and that her trustees shall be obliged to apply personal estate, and rents and profits, when they arise, to the satisfaction of such general engagements." Page 20.

In the late case of *Johnson v. Gallagher*, 7 Jurist, N. S., 273, *Hulme v. Tenant* is " considered as a resting place" (page 278), and, upon a review of the subsequent authorities, is followed, and upon the strength of it and them Sir G. J. TURNER, L. J., giving the opinion of the court, said: " When a man contracts a debt, both his person and property are by law liable

to the payment of it.  A court of equity, having created the separate estate, has enabled a married woman to contract debts in respect of it.  Her person cannot be made liable either in law or in equity, but in equity her property may.  This court, therefore, as I conceive, gives execution against the property, just as a court of law gives execution against the property of other debtors."  Page 279.  This case is not referred to in *Conway v. Smith* nor *Todd v. Lee;* but the case of *Hulme v. Tenant*, and subsequent English cases upon which it was based, were cited in both, for the purpose of showing that the statute only empowered a married woman to bind herself at law as she formerly bound herself in equity.  The decisions of the different states may not be particularly valuable to this discussion, since the statutes in the several states differ more or less from our own; but we apprehend that the statutes in but few states go further than ours.

In *Deering v. Boyle*, 8 Kansas, 525, the case of *Yale v. Dederer*, 22 N. Y., 450, is disapproved, and, in the language of VALENTINE, J., " the able and exhaustive opinion of Chief Justice DIXON in the case of *Todd v. Lee*," and the English case, are approved; and the court went further, and held that " when a married woman executes a promissory note in payment and satisfaction of her husband's debt, an action may be maintained against her on said note, and her separate property applied in payment of the same, even without showing that it was intended to charge such estate."  That case was followed in *Wicks v. Mitchell*, 9 Kansas, 80.

In *Phillips v. Graves*, 20 Ohio St., 371, the case of *Hulme v. Tenant*, several of the subsequent English cases, and *Todd v. Lee*, are referred to approvingly, and it is held that " a married woman possessed of a separate estate  .  .  .  may charge the same with her debts, at least to the extent that such debts may be incurred for the benefit of her separate estate or for her own benefit upon the credit of her separate property.  Such power is incident to the absolute ownership of property,

and is limited only by the terms of the instrument creating the separate estate, or by implication arising therefrom. Her intention to charge her separate property, at the time the debt is incurred, may be either expressed or *implied*. Such intention may be *inferred* from the fact that she executed a note or other obligation for the indebtedness."

In *Kimm v. Weippert*, 46 Mo., 532, it was held that a "*feme covert* is absolutely a *feme sole* with respect to her separate estate when she is not especially restrained, by the instrument under which she acts, to some particular mode of disposition. The *jus disponendi* is incident to her separate estate, and follows it by implication."

In *Bank v. Taylor*, 62 Mo., 338, it was held that, "in reference to her separate estate, a married woman is treated as a *feme sole;* and the giving of a note or making of a written contract by her raises the presumption that she intends to bind such estate, and the contrary cannot be proved by parol."

In *Jones v. Glass*, 48 Iowa, 345, it was held that "the wife is personally liable with her husband for the expenses of the family, and a personal judgment may be rendered against her therefor, in a joint action against her and her husband, notwithstanding her husband may have been discharged in bankruptcy."

In *Lake v. Dillard*, 55 Miss., 63, it was held that, "where supplies purchased by either the husband or the wife are used on the plantation cultivated by the wife, whether the same belongs to her in fee-simple or otherwise, or is merely occupied by her for a term of one or more years, her separate estate is liable for the debt contracted for such supplies."

In *Radford v. Carwile*, 13 W. Va., 572, the decision of the court in *Todd v. Lee* is followed, and, after quoting at length from the opinion of Judge Dixon, the same is declared to be "substantially sound." Page 625.

In *Wilder v. Richie*, 117 Mass., 382, it was held that a note given by a married woman for a loan of money upon the faith

and credit of her separate estate was binding upon her, even if the lender knew that the money was to be used by her for the benefit of her husband.

In *Andrews v. Mathews*, 124 Mass., 109, it was held, under the statute of 1874, authorizing a married woman to make contracts in the same manner as if she were *sole*, that "a promissory note made by a married woman jointly with her husband, for no other consideration than a debt of his to the payee, binds her." Under the same statute, it was held in *Kenworthy v. Sawyer*, 125 Mass., 28, that the wife of one of the partners of a firm could bind herself by indorsing a note for the accommodation of the firm.

With this array of authorities, it will not be expected that this court will take any backward steps. The rules of construction adopted in *Conway v. Smith*, *Todd v. Lee*, and other cases in this court, must be adhered to. The statutes in force when those decisions were made, are found substantially in sections 2340–2342, R. S., and they in effect empowered a married woman to take and hold real and personal property to her sole and separate use, and to convey and dispose of the same, and any interest or estate therein, "in the same manner and with like effect as if she were unmarried." In the apt language of PAINE, J., in *Conway v. Smith*, "this power," to take, hold, convey and dispose of property, under the law as it then stood, was justly held to "carry with it, as *an incident*, the power of making such contracts as are necessary or convenient to the enjoyment of the property so held." Page 130. The learned judge continued: "The conclusion seems to me inevitable, that, when the law *restored* to married women the power of taking and holding property as if unmarried, it gave, as a *necessary incident* thereto, the power of contracting with respect to it. I suppose it would not be disputed that if the latter power is a necessary incident of the former, then it passed by the grant of the former, without being expressly mentioned. But . . . the equity doctrine . . . bears

with its whole weight in favor of the proposition that the power of contracting with respect to it is a necessary incident of the power to hold and enjoy a separate estate. They, therefore, who deny that this statute gave her the power to contract, must impute to the legislature the unreasonable intention of withdrawing her property from her husband's control and placing it wholly under her own, and yet withholding from her all the means necessary to its beneficial enjoyment." Page 131. "It cannot be assumed that the law-makers intended to rely on equitable aid to help out the objects of the statute. That would be to say that they intended to make a law that should be insufficient to accomplish its own purposes. No. It must be assumed that they intended to attain their objects by law, and not by equity without law." P. 132. "I am compelled to say, therefore, that our statute did give to married women, as necessarily incidental to the power of holding property to their own use, the power of making all contracts necessary or convenient to its beneficial enjoyment, and that such contracts are to be regarded as valid at law." Page 136.

Since those decisions, the legislature of this state have greatly enlarged the powers of married women. Chapter 155 of the laws of 1872, embodied substantially in sections 2343 and 2345, R. S., provided that "the individual earnings of every married woman" become "her separate property," and "every married woman may sue in her own name, and shall have *all the remedies of an unmarried woman* in regard to her separate property or business, and to recover the earnings secured to her, and shall be liable to be sued in respect to her *separate property or business*, and judgment may be rendered against her, and be enforced *against her and her separate* property *in all respects as if she were unmarried.*"

In construing these sections, this court, following the rules of construction laid down in *Conway v. Smith, Todd v. Lee*, and *Leonard v. Rogan*, in *Meyers v. Rahte*, 46 Wis., 655, per

LYON, J., held that "a married woman is entitled to her own earnings, including the profits of a business carried on by her with capital which is her sole and separate property, and may make contracts in respect thereto *as if she were sole,* enforceable by or against her in *legal* actions." That was a suit in equity to have claims declared a specific lien, but it was held on demurrer that the suit could not be maintained, for the reason that the plaintiff's remedy was "at law, and not in equity."

In *Dayton v. Walsh,* 47 Wis., 113, the opinion was written by the present chief justice, and *Meyers v. Rahte, Conway v. Smith,* and other cases in this court, were followed and approved, and under the statute as it now stands it was held that the crops raised upon a farm purchased by the wife entirely on credit (she at the time having no separate estate), by the joint labor and management of herself and husband, were the property of the wife, and not subject to sale for the husband's debts. In the discussion of the subject, the chief justice said: "Does not the law allow her to buy these things on credit, or acquire a separate estate by her earnings? It seems to us it does. It is but another application of the same principle to permit her to lease or buy a house on credit, in which she may keep a private school, or earn money in keeping boarders; or to permit her to buy a farm in the same manner, and raise stock or grain, and thus acquire a separate estate. It is in perfect accord with the spirit of all the legislation in regard to the property rights of married women, to enable her to do these things. These *statutes are remedial* in their character; intended to *remove the disabilities* which the common law attached to married women, and were designed to enable them to have, hold and acquire property which they could call their own, and to earn something for themselves by skill and labor. They are therefore to be *liberally* construed to secure the object of their enactment." Page 120.

This view of the statute would seem to be eminently sound.

Krouskop vs. Shontz and husband.

When we reflect that married women were possessed of separate estates long prior to the statutes, and that her contracts in reference to the same were enforceable in equity, the object of the statute becomes apparent. Before the statutes, her personality and rights of property were, in law, merged in her husband. She was under a ban where courts of law could recognize neither the one nor the other. It was necessary for the more delicate vision of equity to penetrate the covering and discover what, in good conscience, was hers, and then, with its more flexible appliances, aid her in the execution of her wish. In a sense she was the ward of the chancellor. The object of the statute, obviously, was not to enable her to do in equity what she could do before, but rather to partially restore to her that power and individuality which, in the eyes of the law, she had lost by entering into the marriage relation. It enabled her to dispense with trustees and indirect and complicated methods of business, and, within the scope of the statute, to act for herself and in her own name by simple and direct methods, which are recognized in courts of law, "in all respects as if she were unmarried." Within the limitation of the statute, the law applicable to unmarried women is thereby made applicable to married women. The theory of the statute is not so much a creation of power which she never possessed, as a partial restoration of the power which she is supposed to have lost.

We therefore conclude that, (1) Where a married woman owns a farm, and herself and husband are engaged together in the "business" of carrying on the same, and they purchase goods for the use, benefit and enjoyment of themselves and family upon the credit of such property being her separate estate, she as well as her husband thereby becomes liable therefor in an action at law in all respects as if she were unmarried. (2) And this is so, whether the evidence of the contract is wholly written or wholly oral, or partly written and partly oral. (3) The rights, powers and remedies expressly given to

a married woman by the statute, include within them, by necessary implication and as incident thereto, the legal right and power of doing such things, making such contracts and resorting to such remedies as are necessary or convenient *to the* beneficial enjoyment of the rights, powers and remedies thus expressly given.

*By the Court.*— The judgment of the circuit court is affirmed.

ORTON, J., dissents.