## ARNDT vs. HARSHAW.

*October 19 — November 3, 1881.*

53 269
83 582

MARRIED WOMAN: HUSBAND AND WIFE. *(1) Deed to married woman from third person: burden of proof as to fraud. (2) Badges of fraud. (3) Husband as witness for wife.*

1. Under our statutes, a deed of land to a married woman from a person other than her husband is *prima facie* evidence of her title to the land and to crops grown upon it; and one who claims that the deed was taken in fraud of the husband's creditors, has the burden of proof.
2. The fact that a husband has worked for his wife upon her farm, or in a business carried on by her, or has acted as her agent in the transaction of her business, is not a badge of fraud as against his creditors.
3. A husband may testify for his wife as to matters in which he acted as her agent; and his answering a question not admissible under that rule cannot be treated as error under a mere general objection at the outset to his competency.

APPEAL from the County Court of *Winnebago* County. Replevin, for property seized by defendant, as sheriff, by virtue of an execution issued on a judgment against Ferdinand Arndt, the plaintiff's husband. The property consisted of grain and hay grown in 1877 on a farm which plaintiff claims as her separate estate, and to which she holds the title. The defendant claimed that the farm was purchased, in part at least, with the means of the husband; that plaintiff held the title in fraud of the husband's creditors; and that the crops grown thereon were therefore liable to seizure on the execution. The testimony and the rulings of the court on the trial are sufficiently stated in the opinion. The plaintiff recovered; and the defendant appealed from the judgment.

*Geo. W. Burnell*, for the appellant, argued, among other things, that the court erred in refusing instructions asked by the defendant, and in instructing the jury that when a married woman takes title to real estate from a stranger, the presumption of the law is that she herself paid the consideration for the purchase, and that a party attacking the *bona fides* of

the transaction must rebut that presumption by evidence. The instructions asked were based upon the direct authority of *Stanton v. Kirsch*, 5 Wis., 338; *Horneffer v. Duress*, 13 id., 603; *Feller v. Alden*, 23 id., 301; *Duress v. Horneffer*, 15 id., 195. These authorities have never been overruled or questioned in this court, and were themselves based on *Hallowell v. Horter*, 35 Pa. St., 375; *Gamber v. Gamber*, 18 id., 363; *Keeney v. Good*, 21 id., 349; 45 id., 89. That the same rule is applicable where the property claimed is real estate, is laid down in *Rhoads v. Gordon*, 38 Pa. St., 277. In that case, the issue being between the wife and the judgment creditor of the husband, it appeared that the wife took the title from a stranger; but, there being no proof as to who furnished the consideration, the court directed the jury to find for the defendant; and the judgment was affirmed. In *Weymouth v. Railway Co.*, 17 Wis., 550, and *McVey v. Railway Co.*, 42 id., 532, this court very properly refused to apply the rule above stated to a controversy between the wife and a mere trespasser.

*W. B. Felker*, for the respondent.

LYON, J. There are numerous alleged errors assigned as grounds for reversing the judgment of the county court, but the view we take of the case renders a specific consideration of many of them quite unnecessary. We think the undisputed evidence shows that in 1869 the plaintiff purchased the farm on which the crops seized by the sheriff were grown, in her own right, of one Murray, who gave her a land contract therefor; that at or about the time of such purchase she paid on the price of the farm $1,000, which was given to her by her father; that she afterwards paid thereon $400, borrowed by her of her father, for which she and her husband gave their note; that the contract price of the farm was $3,500; and that in 1876 Murray conveyed the farm to the plaintiff, and she and her husband executed to him a note, secured by their mortgage on the farm, for $970, that being the unpaid

balance of the agreed price. There are some discrepancies in the testimony of the wife as to dates of payment, but none as to the sums paid, or the sources from whence she received the money. She also stated that her husband did not sign the notes and mortgage above mentioned, but it was shown that he did. The judgment upon whicn the execution issued, under which the sheriff justifies his levy, is in favor of one Ernest Funk, and was recovered in 1875. It is understood that the indebtedness upon which it was recovered was a loan of $238 made in 1868 by Funk to Ferdinand Arndt. It was a controverted question on the trial, whether or not the money so loaned by Funk was applied in part payment for the farm. If it was not, the whole amount paid Murray, over and above the sums received by the plaintiff of her father, as before stated, was paid by the plaintiff out of the proceeds and profits of the farm. On this proposition there is no conflict in the testimony.

The question whether the Funk loan was so applied was submitted to the jury as a controlling one in the case. The court instructed the jury, in effect, that if such loan went into the purchase money of the farm, the transaction was fraudulent as to him, and the plaintiff could not recover. The only testimony in the case which tended to show that any money of the plaintiff's husband was applied in payment for the farm, is that relating to the disposition of the money which he borrowed of Funk in 1868. The signing of the notes and mortgage with his wife is not significant; for the undisputed evidence is, as already observed, that the loan of $400 was her loan and not his; that the purchase of the farm was made by her in her own right; and that she had separate estate which was applied in payment therefor. Neither is it important that the husband worked for his wife on the farm and in the business of butchering, which she sometimes carried on in the winter, and acted as her agent in the transaction of her business. His employment by her was lawful, and is not a badge or evi-

dence of fraud. *Feller v. Alden*, 23 Wis., 301; *Dayton v. Walsh*, 47 Wis., 113.   Hence, under the testimony, there was no question of fact to be submitted to the jury as bearing upon the averment of fraud, except the question which was submitted to them as to the use made of the Funk loan; and we think the defendant cannot justly complain that the learned county judge did not give the law correctly in that behalf.   If the judge erred, the error was in favor of the defendant, for he held that if such loan was applied towards paying for the farm the plaintiff could not recover.

The jury having negatived the only alleged fact upon which the claim of fraud can be predicated, the judgment for the plaintiff cannot be disturbed unless there was some material error in the rulings of the court which may have affected the verdict.   It is believed there are but two rulings requiring consideration, which could have affected the verdict. One of these related to the rule of evidence, the other to the admission of testimony.

1. The court refused to give several instructions proposed by the defendant, to the effect that the burden was upon the plaintiff to show that the farm was her separate estate, and that she must prove the fact by the clearest evidence and beyond a reasonable doubt, or she could not recover in the action. Also that transactions between husband and wife should be closely scrutinized to see whether they were not intended to cover fraud.   The court charged the jury on this subject as follows: "Dealings between the husband and wife in relation to the property, by which the rights of the husband's creditors may be prejudiced, are to be scrutinized closely and carefully, because the marital relation is one which affords facilities and opportunities for fraudulent concealment of property, to such an extent that, where the husband and wife deal together, either directly or indirectly, and the property of the husband is in any manner transferred, or the title of it in any manner transferred, to the wife, the transaction, when questioned by

any creditor of the husband, is to be scrutinized very closely, very carefully; but when a married woman takes title to real estate from a stranger, the presumption of the law is the same in regard to the conveyance as it is in the case of any other grantee, and that presumption is that she herself paid the consideration for the purchase. A party attacking the *bona fides* of the transaction, therefore, is called upon to rebut that presumption by evidence that she had no separate estate, or that the consideration in fact came from the husband."

The statute confers upon a married woman the right to take a conveyance of real estate from any person other than her husband, and to hold and enjoy the same, and the rents, issues and profits thereof, to her sole and separate use, and to convey or devise the same "in the same manner and with like effect as if she were unmarried." R. S., 660, § 2342. Had the plaintiff been an unmarried woman, proof that she held the legal title to the farm would have made a *prima facie* case of her right to the crops grown upon it. To defeat a recovery by her in this action, it would be incumbent on the defendant to prove affirmatively that she held such title in fraud of the judgment creditor upon whose execution the defendant seized the crops grown on the farm. Such being the rule of evidence in a litigation concerning the crops in controversy, were she unmarried, the statute steps in and declares, substantially, that, although married, the rule of evidence shall be the same. Otherwise a married woman would not hold and enjoy her separate estate "in the same manner and with like effect as if she were unmarried." To the unmarried woman her title is her shield and protection until overturned by the assault of her adversary; to the married woman (if the rule contended for prevails) her title, when assailed, is no protection; it establishes no *prima facie* right. She must go behind it, and prove by other evidence that the property is hers. And she must prove this by evidence as strong and conclusive as the law requires to send one charged with felony to prison or the

gallows, or she loses her estate. Under that rule the dissimilarity in the tenures by which a married and an unmarried woman hold their separate estate is aptly illustrated in the parable of the two houses, one of which was built upon the sand and the other upon a rock.

The instructions asked and refused, or some of them, follow the language of this court in several cases heretofore determined. *Stanton v. Kirsch,* 6 Wis., 338; *Horneffer v. Duress,* 13 Wis., 603; *Duress v. Horneffer,* 15 Wis., 195; *Feller v. Alden,* 23 Wis., 301; *Hoxie v. Price,* 31 Wis., 82.

In *Stanton v. Kirsch,* the wife claimed to be the owner of a clock which had been seized for the debt of the husband. The evidence of her title was entirely consistent with the theory that her husband was the owner, except some loose declarations of the husband and wife to the contrary. It was held that to entitle the wife to recover she must go further, and must show beyond a reasonable doubt that she purchased the clock with her own means.

The same rule was applied in *Horneffer v. Duress* and *Duress v. Horneffer* (S. C.), which was an action to recover the value of a quantity of wood alleged to be the partnership property of the plaintiffs, who were mother and son, and partners in business. The business was managed by the husband and father of the partners, and the wood had been seized by the defendant, a sheriff, on executions against the property of the husband. The wife was required to show that the wood pertained to her separate estate.

In *Feller v. Alden* the rule is not discussed or considered. It merely appears that the circuit court charged the jury that if they were satisfied from the testimony, beyond a reasonable doubt, that the farm on which the property in controversy (grain and cattle) was seized, was purchased with money of the wife, such property was her separate estate, and not liable to seizure for the debts of her husband. The rule of evidence thus given was favorable to the appellant, and hence the court

was not called upon to review it on his appeal, and did not do so. In *Howie v. Price*, the wife derived title to certain lands through mesne conveyances from her husband. The action was by creditors of the husband to set aside such conveyances as fraudulent. This court said in that case that, on account of the great facilities for fraud growing out of the relation of husband and wife, transactions of the character there disclosed should be closely scrutinized.

In none of these cases was it held, that when the title of the wife to real estate, not derived from her husband, is assailed as fraudulent by the creditors of her husband, she must go behind her title deeds and show in the first instance, by testimony other than her title deeds, that it is in fact her separate estate. Much less was it held that she must thus establish her right beyond a reasonable doubt, or lose her property. Whatever general language may be found in some of the cases, we are not aware that this court has ever held any such harsh and exceptional rule in a case like this. Had it done so, considering the manifest purpose and the plain provisions of the statute above cited, we should hesitate to follow and uphold the rule.

It must be held, therefore, that when the plaintiff introduced in evidence her deed of the farm from Murray, she proved *prima facie* that she owned the farm, and, consequently, the crops in controversy grown upon it; and that her right to recover in this action could only be defeated by showing that she held the title in fraud of her husband's creditors. It is established by the verdict of the jury that the defendant failed to show that she so held it.

2. The plaintiff's husband was offered as a witness in her behalf. Defendant objected that he was an incompetent witness for the plaintiff, but the objection was overruled. The witness then testified that he was the agent of his wife (which fact already appeared by the testimony), and that certain acts of his were done as such agent. He also testified that none

of the money which he borrowed of Funk, the judgment creditor, went into the farm. The testimony was not objected to, and no motion was made to strike it out. The witness was incompetent to testify as to what was done with the money borrowed of Funk, for that does not pertain to his agency. No objection was made to it, however, and we think the objection to the competency of the witness to testify at all does not reach the error. It was so held in *Holmes v. Fond du Lac*, 42 Wis., 282, and *Chunot v. Larson*, 43 Wis., 536.

It is believed that the views above expressed cover and dispose of all the material errors assigned as grounds for reversing the judgment, adversely to the defendant. The judgment of the county court must be affirmed.

*By the Court.*— Judgment affirmed.