PELIKAN, Appellant, vs. RUSSELL and wife, Respondents.

*March 7—April 5, 1955.*

For the appellant there was a brief and oral argument by *Roman H. Papka* of Milwaukee, and *James A. Fitzpatrick* of Watertown.

For the respondents there was a brief by *Hedding & Hedding* of Milwaukee, and oral argument by *James A. Hedding*.

STEINLE, J. From June 30, 1945, to June 30, 1947, James A. Russell rented premises at 764 North Sixth street, Milwaukee, under written lease from Edward J. Pelikan. Russell operated a tavern upon these premises. Pelikan served notice upon Russell terminating tenancy as of June 30, 1947. Russell failed to surrender possession at the time demanded, and an unlawful-detainer action was commenced by Pelikan in the civil court of Milwaukee county for Russell's eviction. On June 30, 1948, a writ of restitution was issued by the court, and Pelikan recovered possession of the premises. In 1949 Pelikan commenced an action in the circuit court against Russell for treble damages under sec. 291.10, Stats., for the

unlawful withholding of the premises from July 1, 1947, until June 30, 1948. Judgment in favor of Pelikan was rendered against Russell in that action for $10,061.61 on October 31, 1952. The judgment was not satisfied.

In the present action, which was commenced on February 2, 1953, Pelikan sought to establish that a homestead in the town of Wauwatosa, Milwaukee county, purchased by Thelma I. Russell had been paid for by moneys acquired by James A. Russell in the operation of the tavern business, and from his employment with others, and that such moneys had been deposited in a safety-deposit box in a Milwaukee bank opened in the name of Alice E. Parker on May 28, 1948, and with right of entry to Alice E. Parker and George A. Parker. It appears that Alice E. Parker was the mother of Thelma I. Russell, and that previous to her marriage to Mr. Parker, had been divorced in Iowa from Mrs. Russell's father. Plaintiff's proof shows that on October 27, 1948, the safety-deposit box was placed in control of the Parkers as joint tenants with the right of deputy to Mrs. Russell who had withdrawn moneys from the safety-deposit box which were contained in envelopes marked, "J. A. Russell or wife," for the down payment on the real estate and for the satisfaction of the mortgage. The Russells presented evidence that the moneys used as a down payment for the real estate, and those used to satisfy $6,666 of the $7,500 mortgage thereafter, were not the property of James A. Russell. Evidence was introduced that Mrs. Parker had saved for Mrs. Russell the sum total of all the payments of support money sent by Mrs. Russell's father of $20 per month from the time that Mrs. Russell was three years of age until she became eighteen. Saved also for Mrs. Russell by Mrs. Parker were amounts of money delivered weekly by the daughter to the mother over a period of years before the daughter's marriage. The accumulations from these separate sources totaled approximately $11,000 at the time of the marriage of the Russells in September, 1944. The entire amount was held by Mrs. Park-

er for Mrs. Russell. In 1945 Mrs. Russell with a partner established a beauty salon which was operated for only five months when it was sold and $3,500 was realized.

Thelma I. Russell testified that she purchased the home in her own name in November, 1948, for $12,500; paid down $5,000, which she obtained from her mother from the $11,000 savings; that she and her husband executed a mortgage and note to a bank for the balance of $7,500. Payments of $69 monthly were made to apply on the mortgage debt. In 1952 the principal still due on the mortgage was $6,666. That sum was paid in full from the $4,000 then remaining from the $11,000 savings, and from moneys given to Mrs. Russell for her own children by George Parker after the death of Mrs. Parker in 1949.

Plaintiff at the trial produced as a witness, a custodian of records of the Wisconsin tax department, who presented income-tax returns of Thelma I. Russell and James A. Russell. These records reveal the following information:

Thelma Bassett

| Year | Gross Profit Income | Net Taxable Income | Source |
|---|---|---|---|
| 1941.... | $1,304.90 | $1,299.90 | Beauty Salon |
| 1942.... | 1,456.00 | 1,285.00 | "           " |
| 1943.... | 1,924.00 | 1,694.07 | "           " |

(Thelma Bassett Russell)

| | | | |
|---|---|---|---|
| 1944.... | 2,017.00 | 1,801.29 | "           " |
| 1945.... | 1,350.00 | 1,264.79 | James Russell |

James A. Russell

| | | | |
|---|---|---|---|
| 1945.......... | $3,235.00 | 2,992.05 | Tavern Business |
| 1946.......... | 5,014.37 | 4,669.91 | "           " |
| 1947.......... | 2,512.09 | 2,436.73 | "           " |
| 1948.......... | (loss | 3,431.25) | "           " |
| 1949.... | 4,301.94 | 3,606.56 | Steamfitter |
| 1950.... | 4,848.42 | 4,003.94 | "      " |
| 1951.... | 5,635.09 | 4,612.70 | "      " |
| 1952.... | 11,480.42 | 9,530.02 | Steamfitter (principally in Greenland) |

It appears that from moneys contributed by Russell for support of the family from November, 1948, until April, 1952, the sum of $69 per month was used in payment of the monthly instalments due on the mortgage obligation. Russell arrived in Greenland in April, 1952. He testified that while employed there, he sent home around $5,300. He also testified as to his unfamiliarity with the personal estate of Mrs. Russell.

Mrs. Russell testified that the mortgage had been completely paid before Russell started to send money from Greenland. Her testimony respecting this and other matters was corroborated by George Parker.

Upon adverse examination before trial, Mrs. Russell had indicated that she inherited the sum of $4,000 from her mother. At the trial she stated that this amount of $4,000 was in the safety-deposit box, referred to previously herein, when her mother died, and which money the mother had saved for her.

James A. Russell was forty-seven years of age and Thelma I. Russell was thirty-three years of age at the time of the trial. There were three children in the Russell family.

Appellant Edward J. Pelikan contends that from all the facts and circumstances there were strong grounds for believing that the property belonged to the husband, James A. Russell, and that under the rule of *Gettelmann v. Gitz* (1891), 78 Wis. 439, 47 N. W. 660, it was incumbent upon the wife to establish by clear and satisfactory evidence that she purchased and paid for the property out of her separate estate.

Sec. 231.07, Stats., provides:

"RESULTING TRUSTS. When a grant for a valuable consideration shall be made to one person and the consideration therefor shall be paid by another, no use or trust shall result in favor of the person by whom such payment is made; but the title shall vest in the person named as the alienee in such conveyance, subject only to the provisions of section 231.08."

"231.08  FRAUD AGAINST CREDITORS. Every such conveyance shall be presumed fraudulent as against the creditors of the person paying the consideration, and when a fraudulent intent is not disproved a trust shall result in favor of such creditors to the extent that may be necessary to satisfy their just demands."

In its opinion the trial court in part stated:

"Before the provisions of section 231.08 may be invoked to declare a conveyance fraudulent as against the creditors of the person paying the consideration, it is obvious that the party claiming the benefit of the statute must establish that the conveyance for a valuable consideration is made to one person and that the consideration therefore is in reality paid by another. (Sec. 231.07, Stats.)

"Much reliance has been placed by the plaintiff on the adverse examination of Thelma I. Russell, and the court has carefully read and considered all of the adverse examination in evidence of that defendant in the light of the evidence which the court considers to be credible and reliable given upon the trial of the action, and I have concluded that the plaintiff has failed to meet the burden of proof imposed as a prerequisite to creating the presumption of fraud against creditors defined by section 231.08. On the contrary, it is held that the evidence establishes that the tavern business conducted by the defendant James A. Russell was productive of hardly more than a fair living for the parties, and the fact appears almost without contradiction that the defendant Thelma I. Russell before and subsequent to the death of her mother had funds of her own which were used in the purchase of the real estate sought to be impressed with the constructive trust.

"It is considered that the proofs by the defendant Thelma I. Russell, corroborated by the witness George A. Parker, who impressed the court as a truthful and credible witness in all respects, compel the conclusion that judgment be ordered dismissing the complaint upon the merits."

Under well-established rules the weight and credibility of the evidence were matters for the trial court to determine. It is manifest from an examination of the court's opinion that

in view of Pelikan's charge of fraud against the Russells, the court carefully scrutinized the evidence and concluded that the moneys held by Mrs. Parker were not the property of James A. Russell. There is nothing of record to indicate that he had any income from the time of his marriage other than such as was reported to the tax department. With the expense of supporting a family upon income as is reflected in the record, it does not seem reasonable that he would have been able to have accumulated savings sufficient to enable him to pay the purchase price of $12,500 for the property in question. While the arrangement by the mother and daughter with reference to the savings may appear somewhat unusual, it cannot be said that it was an improbable one. Certainly it cannot be denominated incredible as a matter of law. In *Marston v. Dresen* (1893), 85 Wis. 530, 540, 55 N. W. 896, the court observed that:

". . . this story is in many respects remarkable, but we certainly are not prepared to say that it is incredible. . . . If evidence is to be always disbelieved because the story told seems remarkable or impossible, then a party whose rights depend on the proof of some fact out of the usual course of events will always be denied justice simply because his story is improbable. Such is not the rule. A remarkable and exceptional state of facts may be satisfactorily proven, and if so proven a court cannot refuse belief simply because it is out of the usual course of events. The circuit court, after hearing all the evidence, believed the defendants' statements to be true; and we cannot, after careful reading of the evidence, say that his finding in this respect was wrong, and we concur therein."

Appellant points to the fact that the $69 monthly instalment payments were derived from the husband's income and were part of the consideration for the conveyance.

However, it is to be noted that Russell had an obligation to support his family, which support included the furnishing of shelter, and that $69 per month does not appear to be an

extravagant sum for such purpose for a family situated as was his. There is nothing of record to indicate that such contributions were made to the wife in defraud of creditors or that he thereby obtained a legal interest in the property.

Appellant also maintains that the signing of the mortgage and note by James A. Russell displays his interest in the purchase of the property, and is a further indicia of his fraud. It cannot be held that the husband's joinder in the mortgage is necessarily a badge of fraud. In *Arndt v. Harshaw* (1881), 53 Wis. 269, 271, 10 N. W. 390, the court said:

"The signing of the notes and mortgage with his wife is not significant; for the undisputed evidence is, as already observed, that the loan of $400 was her loan and not his; that the purchase of the farm was made by her in her own right; and that she had separate estate which was applied in payment therefor."

Here the trial court found that such joinder was for convenience and because it was required by the mortgagee.

Although Russell's name appeared with that of the wife on the envelopes in the safety-deposit box from which at least a portion of the money used in purchase of the home, was withdrawn, there is no evidence indicating that he placed his name thereon, or that he knew of the presence of his name there, or that he had any right to money in the envelopes or that he exercised any control thereof.

The failure of the plaintiff to establish that the consideration for the conveyance was paid from funds belonging to Russell, coupled with positive proof of requisite degree offered on behalf of the Russells that the moneys used to purchase the property belonged to the wife, was sufficient to warrant the findings made by the trial court. We are not able to declare that such findings are against the great weight and clear preponderance of the evidence. The court's judg-

ment that no trust in favor of Pelikan against the Russells arose from the purchase of the homestead by the wife, must stand.

*By the Court.*—Judgment affirmed.